[No. 62524-7. En Banc. September 14, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. GREGORY
ROBERT BOSTROM, ET AL., *Respondents*.

*Bernardean Broadous, Prosecuting Attorney,* and *John M. Jones, Deputy;* and *Kalo Wilcox,* for petitioner.

*Foster, Foster & Schaller,* by *Rex N. Munger;* and *John J. Sinclair,* for respondents.

*Christine O. Gregoire, Attorney General,* and *James T. Schmid, Assistant,* on behalf of Department of Licensing, amicus curiae.

*Greg A. Rubstello* and *William L. Cameron* on behalf of Washington Association of Municipal Attorneys, amicus curiae.

PEKELIS, J. — We accepted the parties' petition for discretionary review of these consolidated cases in which the Thurston County District Court (1) suppressed the test results of the Respondents who consented to a breathalyzer test and (2) suppressed the evidence of refusal by those Respondents who would not consent to such a test. The court concluded that the implied consent warnings which the arresting officers read to the Respondents were inadequate because they failed to warn them of the new administrative consequences for taking the test and having a breath alcohol level of 0.10 or higher and of the new penalty enhancements for refusing to take the test. We reverse, concluding neither the implied consent statute nor

constitutional due process mandates the giving of additional warnings.

At various times after July 1, 1994, each of the Respondents were arrested in Thurston County for driving while intoxicated. The arresting officers advised the Respondents of their *Miranda* rights and read them the following implied consent warnings:

> Further, you are now being asked to submit to a test of your breath which consists of two separate samples of your breath, taken independently, to determine alcohol content. You are now advised that you have the right to refuse this breath test; that if you refuse, your privilege to drive will be revoked or denied by the Department of Licensing; and that you have the right to additional tests administered by a qualified person of your own choosing and that your refusal to take the test may be used in a criminal trial.

Several of the Respondents consented to the breath test. All who took the test had a breath alcohol level of 0.10 or higher. Some of the Respondents refused the test.

On November 17, 1994, the Thurston County District Court suppressed the results of those Respondents who submitted to a breath test, as well as evidence of refusal by those Respondents who would not consent to the test. The trial court reasoned that the implied consent warnings as read were inadequate to allow the Respondents to make an informed and intelligent decision on whether or not to consent to the test.

# I

## STATUTORY CONSTRUCTION

In contending that the trial court ruled properly on the suppression motion, the Respondents first argue that, as a matter of statutory construction, the warnings given here were inadequate. We disagree.

In 1968, in an attempt to confront the serious problem of drunk driving in Washington, the voters passed Initiative 242, which provides that all persons operating a motor vehicle within Washington are deemed to have

consented to a test of their breath or blood for the purpose of determining their breath or blood alcohol content. RCW 46.20.308(1). At that time, the law also provided that a blood or breath test of 0.10 or higher was evidence giving rise to a presumption that the driver was under the influence of intoxicating liquors. RCW 46.61.506(2)(c), *repealed*, Laws of 1979, 1st Ex. Sess., ch. 176, § 5.

In 1979, the Legislature amended the law to make a person with a 0.10 or higher alcohol concentration guilty of the crime of driving under the influence of intoxicating liquors (DWI). RCW 46.61.502(1). A person convicted of DWI would have his or her license judicially suspended for ninety days for the first offense, revoked for one year for the second offense within five years, and revoked for two years for the third offense within five years. RCW 46.61.515(3), *repealed*, Laws of 1994, ch. 275, § 42, p. 1787. Under RCW 46.20.285, the Department of Licensing was required to revoke the license of anyone who had received a second DWI conviction within a five-year period.

In 1994, the Legislature again amended the motor vehicle laws pertaining to drunk driving effective July 1, 1994. The amendments include a provision requiring officers to immediately seize a person's license and issue him or her a temporary license if the breath test results are 0.10 or higher. RCW 46.20.365(2)(c). Then, depending on the person's driving history, the Department of Licensing may issue him or her a probationary license. RCW 46.20.355; RCW 46.20.365. The probationary license remains in effect for five years. RCW 46.20.355(2). If, however, within the five-year probationary period, a person has another breath test result of 0.10 or higher, the person's license will be revoked for two years. RCW 46.20.365(3)(b). The 1994 amendments also include stiffer penalties for those who refuse to take the breath test but are nevertheless convicted of DWI. RCW 46.61.5051(2)(b) and RCW 46.61.5052(2)(b).

Since 1968, the implied consent statute has also mandated giving drivers the following warnings:

(2) . . . The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

Former RCW 46.20.308(2). The 1994 amendments to the implied consent law did not alter these warnings. Laws of 1994, ch. 275, § 13, p. 1767.

Recently, however, the Legislature amended these warnings effective as of September 1, 1995. Laws of 1995, ch. 332, § 1, p. 1443. Under the 1995 amendment, in addition to the warnings already included in RCW 46.20.308(2), a driver must also be advised that his or her license will be suspended, revoked or placed in probationary status if he or she consents to a breath test and has an alcohol level above the legal limit. Laws of 1995, ch. 332, § 1, p. 1443.

In this case, the Respondents acknowledge that they were given all the warnings mandated by the implied consent statute in effect at the time of their arrest. Nevertheless, they argue that the officers should have given them additional warnings similar to those contained in the 1995 amendment.[1] Without such additional warnings, they argue that they were inadequately informed of the consequences of deciding to submit to or refuse the breath test and, therefore, the suppression order was justified.

The Respondents' argument rests on their contention that by mandating the implied consent warnings the Legislature sought to ensure that drivers were given an opportunity to make a knowing and intelligent decision about whether to consent to a breath test. *See, e.g., State v. Whitman County Dist. Court*, 105 Wn.2d 278, 281, 714 P.2d 1183 (1986); *Gonzales v. Department of Licensing*, 112 Wn.2d 890, 897, 774 P.2d 1187 (1989); *see also Pryor v.*

---

[1]We note, however, that some of the Respondents contend that even the 1995 amendment would not satisfy due process requirements.

*Department of Motor Vehicles,* 8 Wn. App. 953, 956, 509 P.2d 1018 (1973). They maintain that because the 1994 amendments, which were in effect at the time of their arrest, altered the consequences of submitting to or refusing a breath test, the statutory warnings no longer satisfied this legislative goal.

 ■ We first address the argument of those Respondents who refused the test. They claim that they were deprived of the opportunity to make a knowing and intelligent decision because they were not warned that if they refused the test, they risked enhanced penalties should they be convicted of DWI. RCW 46.61.5051(2)(b) and RCW 46.61.5052(2)(b). This argument is wholly without merit. Included in the statutory warnings read to these Respondents was the admonition that "refusal to take the test may be used in a criminal trial." RCW 46.20.308(2). This information was sufficient to alert respondents to the possibility that their refusal could be used at any phase of a criminal trial, including sentencing. There is no requirement that each and every specific consequence of refusal be enunciated. We therefore reject the Respondents' contention that the warnings given them were inadequate.

 ■ We next address the argument of those Respondents who took the test. They claim that they were deprived of the opportunity to make an informed decision because they were not warned of the new administrative consequences of consenting to a test, and receiving an alcohol reading above the legal limit. Respondents' argument is based on their misinterpretation of our holdings in *Whitman* and *Gonzales.* While we remarked that one of the Legislature's purposes in enacting the implied consent warnings is to provide drivers an opportunity to make an informed decision whether to refuse a breath test, we did not mean to suggest that this underlying purpose was a requirement which overrode the plain language of the statute. *Whitman,* 105 Wn.2d at 281; *Gonzales,* 112 Wn.2d at 897. When the language of a statute is unambiguous, courts may not alter the statute's plain meaning by

construction. *E.g., Department of Licensing v. Lax,* 125 Wn.2d 818, 822, 888 P.2d 1190 (1995); *State v. Johnson,* 119 Wn.2d 167, 172, 829 P.2d 1082 (1992). We are, therefore, not free to graft onto the implied consent statute any additional warnings not contained in the plain language of that statute.

In accordance with this rule of statutory construction, Washington case law has consistently required strict adherence to the plain language of the implied consent statute. *See Connolly v. Department of Motor Vehicles,* 79 Wn.2d 500, 487 P.2d 1050 (1971) (holding that the omission of the statutorily required warning that drivers have the right to have additional tests administered by the qualified person of their choosing renders any license revocations invalid); *Whitman,* 105 Wn.2d at 284-88 (holding that officers cannot diverge from the statutory language and advise drivers that their refusal to take a breath test "shall" be used against them when the statute requires that they be told that it "may" be used against them); *State v. Bartels,* 112 Wn.2d 882, 774 P.2d 1183 (1989) (holding that officers cannot supplement the statutory warnings by informing drivers that they may have additional tests taken "at your own expense"). Only the case of *Pryor v. Department of Motor Vehicles,* 8 Wn. App. 953, 509 P.2d 1018 (1973), suggests that language other than the exact statutory warning might be utilized:

> We decline to read into RCW 46.20.308 a provision which it does not contain *unless we find that the recitation of the rights and warning which the statute requires denies the arrested person the opportunity of exercising an intelligent judgment.*

(Emphasis added.) *Pryor,* 8 Wn. App. at 956. To the extent *Pryor* implies that warnings in language other than that set forth in RCW 46.20.308(2) should be given to Washington drivers, *Pryor* is incorrect.

We will not alter the plain language of the implied consent warnings simply because the Legislature amended related portions of the drunk driving laws. Indeed, the

fact that the Legislature readopted the implied consent warnings without altering their content when it passed the 1994 amendments indicates that it contemplated no such departure from the original warnings. See Laws of 1994, ch. 275, § 13, p. 1767. Thus, we conclude that under the plain language of the statute, the officers were not required to give the Respondents additional warnings about the administrative consequences of a 0.10 breath test.

Furthermore, despite the Respondents' argument to the contrary, our conclusion ensures that the Legislature's purpose in enacting the statute is given effect. While the Respondents are correct that an underlying purpose of the warning provision is to provide drivers an opportunity to make an informed decision about refusing a breath test, *see Whitman*, 105 Wn.2d at 281, this statutory purpose must be harmonized with the other identified legislative goals. We recently reiterated the following three objectives of the implied consent statute:

(1) to discourage individuals from driving an automobile while under the influence of intoxicants,

(2) to remove the driving privileges from those individuals disposed to driving while inebriated, and

(3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication.

*Lax*, 125 Wn.2d at 824 (quoting *Nowell v. Department of Motor Vehicles*, 83 Wn.2d 121, 124, 516 P.2d 205 (1973)).

In the absence of a statutory requirement to the contrary, the omission of warnings regarding the administrative consequences of a breath test of 0.10 serves to further these three statutory objectives. By focusing on the consequences of refusing to take a breath test, drivers are encouraged to submit to a test which provides reliable evidence of intoxication. This, in turn, allows the State to revoke the driving privileges of individuals disposed to drive while inebriated and discourages people from driving while under the influence of intoxicants.

The Legislature's attempt to discourage drunk driving by focusing on the consequences of refusing a breath test indicates that the purpose behind the implied consent warnings is not to allow drivers to exercise an intelligent and informed decision about their right to *submit* to the test, but rather to make an informed decision about their right to *refuse* the test. Until the 1995 amendments to the statute, the implied consent warnings have *never* included language regarding the consequences of submitting to a breath test and obtaining a result of 0.10 or higher. However, it has long been the case that a 0.10 result could lead to a DWI conviction and the subsequent revocation of an individual's driver's license. RCW 46.61.515(3), *repealed*, Laws of 1994, ch. 275, § 42, p. 1787; RCW 46.20.285. Thus, the 1994 amendments do not mark the first time that a person consenting to a breath test risked revocation of his or her license; there previously existed both a judicial and an administrative mechanism for revoking a license when a driver consented to a test the result of which was a breath alcohol level higher than the legal limit.[2]

It is thus apparent that although the new administrative mechanisms for revoking a license may have a more immediate and automatic effect, this does not alter the fundamental fact that there are now, and always have been, negative consequences for having a 0.10 or higher breath test result. Until 1995, the Legislature chose not to warn drivers of any of these negative consequences. As a matter of statutory interpretation, we are bound to uphold the Legislature's choice. We, therefore, conclude that the Respondents were entitled to only those warnings con-

---

[2]In addition to the possible revocation of a person's license, there have long been other judicially imposed consequences for a DWI conviction which is predicated on a 0.10 alcohol concentration. These consequences include the possibility of a jail sentence and a fine. RCW 46.61.515(1) and (2), *repealed*, Laws of 1994, ch. 275, § 42; RCW 46.61.5051(2)(b) and RCW 46.61.5052(2)(b). The implied consent warnings, however, have never contained language alerting drivers that if they obtain a 0.10 or above reading, it may lead to the imposition of these penalties.

tained in the implied consent statute that was in effect at the time of their arrest.[3]

## II
### DUE PROCESS

 The Respondents also contend that the failure to give additional warnings violated their constitutional right to due process. Both the United States Supreme Court and this court have held that the State can constitutionally force a defendant to submit to a blood alcohol or breathalyzer test. *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); *State v. Moore*, 79 Wn.2d 51, 483 P.2d 630 (1971). Washington, however, has chosen to give drivers the right to refuse a breath test. RCW 46.20.308. The choice to submit to or refuse the test is not a constitutional right, but rather a matter of legislative grace. *State v. Zwicker*, 105 Wn.2d 228, 242, 713 P.2d 1101 (1986).

 This, of course, does not necessarily mean that the State is free to give any warnings it wishes without fear of contravening due process. In *South Dakota v. Neville*, 459 U.S. 553, 565, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983), the Court suggested that implied consent warnings may violate a driver's due process rights if they create a situation which is fundamentally unfair. One of the issues in *Neville* was whether the driver's due process rights were violated when the officer failed to inform him that if he refused the blood alcohol test, his refusal could be used against him in a criminal trial. *Neville*, 459 U.S. at 564. South Dakota law permits a refusal to be used as evidence. Its warnings, however, only advise drivers that refusal to submit to a test would result in the revocation of their licenses. *Neville*, 459 U.S. at 555.

---

[3]It is worth noting that each of the Respondents received the appropriate warning under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966). Thus, the Respondents were given the opportunity to seek the assistance of counsel in fully understanding the administrative consequences of the test as well as the potential ramifications of the test on any criminal prosecution. The warnings under RCW 46.20.308(2) are not meant to substitute for the appropriate advice of defense counsel.

The *Neville* Court suggested that if the warnings given the driver were implicitly misleading, they would have been fundamentally unfair. *Neville*, 459 U.S. at 565. It concluded, however, that the warnings were not misleading because they in no way assured the driver that refusal would not be used against him. *Neville*, 459 U.S. at 555-56. The *Neville* Court also noted that the officer had specifically warned the driver that if he refused to take the test, he would lose his driving privileges for one year. *Neville*, 459 U.S. at 566. The Court concluded that this warning that his license would be revoked "made it clear that refusing the test was not a 'safe harbor,' free of adverse consequences." *Neville*, 459 U.S. at 566. Thus, the South Dakota warnings did not unfairly "trick" the defendant, and as a result, they did not violate due process. *Neville*, 459 U.S. at 566.

We likewise conclude that the Washington warnings in effect in 1994 did not violate due process. The warnings offered no implicit assurances which could mislead either the Respondents who refused the test or those who took the test. The warnings informed drivers that their refusal could be used in a criminal trial and, thus, explicitly left open the possibility that refusal may impact sentencing decisions. At the same time, most, if not all, drivers are well aware that if they agreed to the test and the results reveal a breath alcohol concentration higher than the legal limit, there would be adverse consequences both criminal and administrative.

In fact, few crimes have received more public attention than that of driving while intoxicated. "The carnage caused by drunk drivers is well documented and needs no detailed recitation here." *Neville*, 459 U.S. at 558. In the last decade, the citizens of this state and citizens around the nation have sought to combat the menace of drunk driving by launching a public awareness campaign. This campaign not only includes poignant public service announcements highlighting the very real and devastating consequences of drunk driving, but also includes increas-

ing media coverage of all aspects of the problem, including the increasingly harsh penalties for those who choose to drink and drive.

Amidst this climate of public intolerance for drunk driving, we cannot accept the contention that the implied consent warnings somehow misled the Respondents into believing that there could be no immediate administrative consequence for a breath test result above the legal limit. Accordingly, we conclude that the warnings given here were not fundamentally unfair. We therefore reverse the trial court's decision to suppress evidence of the Respondents' breath test results or their refusal to submit to the test and remand for trial.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., concur.