[No. 61839-3-I.   Division One.   August 24, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTINE ELKINS, *Appellant*.

*Christine Elkins*, pro se.

*Jordan B. McCabe*; and *Christopher Gibson* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Randi J. Austell, Deputy*, for respondent.

¶1 LAU, J. — The jury convicted Christine Elkins of attempting to elude a pursuing police vehicle, driving under the influence (DUI), second degree assault, felony hit and run, and bail jumping. Elkins argues that the trial court erred by (1) admitting her custodial statements without *Miranda*[1] warnings, (2) failing to exclude the video and sound recording in violation of Washington's privacy act, (3) admitting her refusal to submit to a breath test despite misleading implied consent warnings, and (4) refusing to exercise its discretion to impose a mitigated sentence for the hit and run conviction. We conclude Elkins waived her *Miranda* violation challenge below, any privacy act violation is harmless, the implied consent warnings were not misleading, the sentencing court properly exercised its discretion, and her statement of additional grounds lacks merit. Accordingly, we affirm the convictions but remand to correct an error in the misdemeanor judgment and sentence.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

## FACTS

¶2 On December 28, 2006, a traffic altercation occurred between Christine Elkins and Donald Hill. When Elkins rolled down her window and shouted expletives at Hill, he called her a "beaner" and told her to go back to her own country. The heated exchange continued when Hill and Elkins pulled into a grocery store parking lot and got out of their cars. Hill said that Elkins struck him with a Crown Royal bottle as he tried to get back into his car. Elkins' son Thaddious got out of Elkins' car and also started hitting Hill. Elkins hit Hill again. Then Thaddious grabbed the bottle and smashed it over Hill's head. As Hill fell to the ground, Elkins and her son drove away.

¶3 Police officers soon spotted Elkins' car and signaled her to pull over. But Elkins drove off and led police on a high speed chase through Auburn. She clipped the front bumper of one police car and continued on, with the officers still in pursuit. Another patrol car hit Elkins' car in a parking lot, but she kept driving. The chase finally ended when Elkins lost control of her car and crashed. When Auburn Police Officers Todd Byers and Joseph Vojir arrested Elkins, they smelled a strong odor of intoxicants on her breath and noted her speech was slurred.

¶4 On the way to the jail, Officer Vojir turned on the patrol car's dashboard video and sound recorder and pointed it at Elkins. Elkins immediately began talking. When she said, "I'm a Native American and I'm honest," Officer Vojir responded, "[T]hat's why you are assaulting somebody and ran from the police."[2] 1 Report of Proceedings (Mar. 18, 2008) at 21. Elkins replied,

---

[2] The transcription of the videotape reflects that Officer Vojir said, "Yeah, that's why you stole from somebody and ran from the cops?" Pretrial Ex. 1. Officer Vojir testified that this was a transcription error.

Well, he shouldn't have told me to go back to my own country; I'm in my own country. Why don't you guys go back to where the Mayflower came from. This is Native American land, not Pilgrim land. Pilgrims come from the fucking Mayflower, across the way. Don't hate because I fucking peeled out on you guys. Fucking haters. Lucky I was fucking buzzed or I'd have got away. Damn it. Did they fuck up their car by hitting me? They did, didn't they? Shouldn't have tried to hit me.

Pretrial Ex. 1. At that point, Officer Vojir advised Elkins that she was being recorded and that anything she said could be used against her in a trial. But Elkins continued talking. When they arrived at the jail, Officer Vojir read Elkins the standard Washington State Patrol DUI implied consent warnings. She refused to take a breath test.

¶5 The State charged Elkins with attempting to elude a pursuing police vehicle, DUI, second degree assault with a special deadly weapon allegation, third degree assault, felony hit and run, and bail jumping. At the pretrial CrR 3.5 hearing to determine whether Elkins' statements made in the patrol car were spontaneous and voluntary, Officer Vojir testified that he heard another officer read Elkins her *Miranda* rights at the time of arrest.[3] Following the CrR 3.5 hearing, the court concluded that Elkins' statements were admissible. In addition, the court admitted the Elkins video and sound recording from the point after Officer Vojir notified her that she was being recorded and also allowed him to testify about what Elkins said prior to the notice.

¶6 At trial, Elkins claimed self-defense to the assault charge based on posttraumatic stress syndrome and battered women's syndrome. A jury convicted Elkins as charged but did not find she used a deadly weapon during the second degree assault.[4] At sentencing, defense counsel argued for an exceptional mitigated sentence of 30 months on the hit and run conviction, which carried the longest

---

[3] At the CrR 3.5 hearing, the State called only one witness. Elkins did not testify.

[4] The jury therefore did not deliberate on the alternative third degree assault charge.

sentence. After concluding no legal basis existed to grant an exceptional sentence, the trial court imposed a standard range sentence. Elkins appealed.

## ANALYSIS

### Implied Consent Warnings

¶7 Elkins argues that the trial court erred by admitting her refusal to take a breath test because the implied consent warnings did not fully inform her of the consequences of refusing the test. The sufficiency of implied consent warnings is an issue of law reviewed de novo. *Jury v. Dep't of Licensing*, 114 Wn. App. 726, 731, 60 P.3d 615 (2002).

¶8 Drivers in Washington are presumed to have consented to a breath or blood test to determine alcohol concentration if arrested for DUI, but drivers may refuse the test. RCW 46.20.308(1). "The choice to submit to or refuse the test is not a constitutional right, but rather a matter of legislative grace." *State v. Bostrom*, 127 Wn.2d 580, 590, 902 P.2d 157 (1995). "A driver must be afforded an opportunity to make a knowing and intelligent decision whether to take the Breathalyzer test." *Gonzales v. Dep't of Licensing*, 112 Wn.2d 890, 894, 774 P.2d 1187 (1989). Thus, the implied consent statute requires the arresting officer to inform the driver in substantially the following language:

(a) If the driver refuses to take the test, the driver's license, permit, or privilege to drive will be revoked or denied for at least one year; and

(b) If the driver refuses to take the test, the driver's refusal to take the test may be used in a criminal trial; and

(c) If the driver submits to the test and the test is administered, the driver's license, permit, or privilege to drive will be suspended, revoked, or denied for at least ninety days if the driver is age twenty-one or over and the test indicates the alcohol concentration of the driver's breath or blood is 0.08 or more, or if the driver is under age twenty-one and the test indicates the alcohol concentration of the driver's breath or

blood is 0.02 or more, or if the driver is under age twenty-one and the driver is in violation of RCW 46.61.502 or 46.61.504; and

(d) If the driver's license, permit, or privilege to drive is suspended, revoked, or denied the driver may be eligible to immediately apply for an ignition interlock driver's license.

RCW 46.20.308(2). "Failure to give a proper implied consent warning will result in suppression of the results of the [B]reathalyzer test." *State v. Trevino*, 127 Wn.2d 735, 747, 903 P.2d 447 (1995).

¶9 It is uncontested that Officer Vojir read Elkins the standard Washington State Patrol (WSP) implied consent warnings. And the parties agree that the WSP warning language is essentially identical to the language required by the implied consent statute. But Elkins contends that the implied consent statute and the WSP warnings are incomplete and misleading because the driver is not told that under RCW 46.61.506(1), the privilege to drive could be suspended, revoked, or denied if a test shows the driver had an alcohol concentration less than 0.08 but the driver is nevertheless convicted of being under the influence.[5]

¶10 We disagree. The implied consent statute does not require this additional warning. "The officer may not add warnings that are not contained in the plain language of the implied consent statute." *State v. Koch*, 126 Wn. App. 589, 594, 103 P.3d 1280 (2005). Moreover, the consequence imposed by RCW 46.61.506(1) plainly applies only to the class of drivers who take a breath test, not those who refuse. *See State v. Bartels*, 112 Wn.2d 882, 890, 774 P.2d 1183 (1989) (suppression of test results required only for defendants who were part of group misled by erroneous

---

[5] RCW 46.61.506(1) provides, "Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor or any drug, if the person's alcohol concentration is less than 0.08, it is evidence that may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor or any drug."

warnings). Because Elkins refused the test, she cannot establish prejudice.

¶11 Elkins further argues that the statute and the WSP implied consent warnings are insufficient because the driver is not told that a mandatory jail term flowed from a conviction after refusing the test.[6] Again, we disagree. Elkins did not challenge the admissibility of her refusal to take the breath test on this ground below. "A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial." *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). Moreover, "[t]here is no requirement that each and every specific consequence of refusal be enunciated." *State v. Bostrom*, 127 Wn.2d 580, 586, 902 P.2d 157 (1995). The language in the implied consent warnings informing drivers that refusal to take the test may be used in a criminal trial is sufficient to alert them that the evidence could be used during sentencing. *Bostrom*, 127 Wn.2d at 586.

¶12 Elkins relies on *Cooper v. Department of Licensing*, 61 Wn. App. 525, 810 P.2d 1385 (1991) to argue that an implied consent warning that does not accurately convey the law is not adequate merely because it mirrors the statutory warning language. Her reliance is misplaced. In *Cooper*, the warnings given were complete because they did not omit any language from the implied consent statute. But the police added warning language that was not entirely accurate. *Cooper*, 61 Wn. App. at 527. The court held that the warning was misleading and prevented the defendant from making a knowing and intelligent decision about whether to take the Breathalyzer test. *Cooper*, 61 Wn. App. at 528. Here, in contrast, the warnings were complete and the officer did not add any language. The trial court properly admitted evidence of Elkins' refusal to take the test.

¶13 We affirm the convictions but remand to correct an error in the misdemeanor judgment and sentence.

---

[6] RCW 46.61.5055(1)(b)(i) imposes a mandatory prison sentence of two days to one year on convicted drivers who refuse an alcohol concentration test.

¶14 The remainder of this opinion has no precedential value and will be filed for public record in accordance with RCW 2.06.040.

GROSSE and ELLINGTON, JJ., concur.