FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 16

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44972-2-II |
| Respondent, | |
| v. | |
| AGYEI JUMAANE MCDANIEL, | PART PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Agyei McDaniel appeals his convictions for second degree murder and second degree unlawful possession of a firearm. He argues, among other things, that the felony murder statute is ambiguous regarding whether assault is a predicate offense and therefore the rule of lenity requires his conviction be reversed. In the published portion of this opinion, we hold that the felony murder statute is not ambiguous, and that it clearly includes a deadly assault as a predicate offense. In the unpublished portion of the opinion, we disagree with McDaniel's remaining assignments of error. Accordingly, we affirm.

## FACTS

McDaniel shot and killed Patrick Nicholas. Testimony at trial showed that the two men were close friends.

McDaniel rented a large storage unit in Tacoma, and Nicholas's family kept some belongings in it in exchange for a small portion of the monthly fee. Being late in payments, McDaniel was required to vacate the unit on December 4, 2012.

On the afternoon of December 4, McDaniel, McDaniel's wife Angela,[1] Nicholas, and Nicholas's wife Korrin Tennyson went to the storage unit. At the storage unit, McDaniel and Nicholas argued with each other. McDaniel felt nervous during the argument because Nicholas seemed extremely angry, and was atypically keeping his hands in his pockets as he talked. McDaniel knew that Nicholas often carried a gun, and McDaniel thought Nicholas might be pointing a gun at McDaniel through Nicholas's pocket. McDaniel also thought Nicholas might be under the influence of PCP[2]-dipped cigarettes, which McDaniel knew Nicholas sometimes used.

Nicholas began to advance on McDaniel, saying "What you gonna do?" 6 Verbatim Report of Proceedings (VRP) at 690-91. McDaniel saw that Nicholas had one hand fully in one pocket and the other hand halfway in another pocket. McDaniel could see something in Nicholas's hand. Nicholas continued to advance on McDaniel, who thought Nicholas was either going to pistol-whip or shoot him. McDaniel then drew a gun and shot Nicholas twice.

McDaniel and Angela left the storage facility, returned home, packed some bags, and drove north. They stayed in a motel in Arlington overnight, but returned to Tacoma the following day, where McDaniel surrendered to authorities.

Nicholas died at a hospital the day after the shooting. The medical examiner determined the cause of death to be a penetrating gunshot wound to the head around the front of Nicholas's scalp. Nicholas also suffered a nonfatal gunshot wound to his shoulder.

---

[1] We refer to Angela McDaniel by her first name for clarity. No disrespect is intended.

[2] PCP, or phencyclidine, is a recreational street drug. *State v. Baity*, 140 Wn.2d 1, 5, 991 P.2d 1151 (2000).

The State charged McDaniel in an amended information with one count of second degree murder with intent to cause Nicholas's death[3] and, in the alternative, second degree felony murder while committing or attempting to commit second degree assault.[4] The State also charged him with second degree unlawful possession of a firearm.[5]

The jury found McDaniel guilty of second degree felony murder with assault as the predicate felony and unlawful possession of a firearm. By a special interrogatory, the jury found that McDaniel did not intentionally kill Nicholas but rather found him guilty of felony murder in the course of and in furtherance of assault.

## ANALYSIS

McDaniel argues that because the felony murder statute is ambiguous with regard to whether an assault causing death is a predicate offense, the rule of lenity applies and requires his conviction be reversed. We disagree with McDaniel that the felony murder statute is ambiguous. Its plain language clearly includes assault as a predicate offense.

### I. STANDARD OF REVIEW

We review interpretation of a statute de novo. *State v. Bunker*, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010). We endeavor to effectuate the legislature's intent. 169 Wn.2d at 577-78. First, we look to the plain language of the statute: if it is unambiguous, then the plain meaning governs. *State v. Bostrom*, 127 Wn.2d 580, 586-87, 902 P.2d 157 (1995). If the statute is

---

[3] RCW 9A.32.050(1)(a).

[4] RCW 9A.32.050(1)(b).

[5] RCW 9.41.040(2)(a). This provision was amended in 2014, but the amendments do not affect our analysis.

ambiguous, we apply traditional statutory interpretation rules to determine its meaning. *State v. Evans*, 177 Wn.2d 186, 192-94, 298 P.3d 724 (2013). The rule of lenity applies only if the plain language of the statute is ambiguous and traditional statutory interpretation rules do not help clarify it. *Evans*, 177 Wn.2d 192-94.

## II. STATUTE UNAMBIGUOUSLY INCLUDES ASSAULT AS PREDICATE OFFENSE

McDaniel argues that the felony murder statute is ambiguous with regard to whether assault is a predicate offense when the assault is the same act resulting in the death. He argues that the statute could be read to apply only to those assaults separate from the act resulting in death. We disagree.

Division One of this court has rejected an argument identical to McDaniel's. *State v. Gordon*, 153 Wn. App. 516, 527-29, 223 P.3d 519 (2009), *rev'd on other grounds*, 172 Wn.2d 671, 260 P.3d 884 (2011). The *Gordon* court concluded that RCW 9A.32.050(1)(b) was not ambiguous. 153 Wn. App. at 529. We follow the holding of *Gordon*. The statute is not ambiguous and a plain language reading of the statute defeats McDaniel's argument.

RCW 9A.32.050(1)(b) provides that a person commits felony murder if he or she "commits or attempts to commit any felony, *including assault* . . . and, in the course of and in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants." (Emphasis added.) This statute unambiguously singles out assault as a predicate offense.

McDaniel urges this court to hold that the "in course of and in furtherance of" language demonstrates that the legislature intended *only* separate, non-fatal assaults to be predicate offenses. Br. of Appellant at 17. But this is an illogical reading of the statute: it ignores the fact

4

that a death cannot occur "in furtherance of" a separate assault that does not cause the death. Were McDaniel correct, the phrase "including assault" would encompass only assaults which were non-deadly by themselves, but nonetheless caused deaths to occur in furtherance of these assaults. McDaniel provides no examples of a factual scenario that would fit this reading. We avoid construing statutes in a way that produces an absurd result, because we presume that the legislature does not intend absurd results. *State v. Engel*, 166 Wn.2d 572, 579, 210 P.3d 1007 (2009). We therefore presume the legislature did not intend to include only assaults that do not cause a death, but where a death results in furtherance of assaults as well.

Moreover, McDaniel's reading ignores the fact that the legislature explicitly *added* the words "including assault" to the statute after our Supreme Court held that assault was not a predicate offense. *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 610, 56 P.3d 981 (2002). In adding this phrase the legislature found

> that the 1975 legislature clearly and unambiguously stated that any felony, including assault, can be a predicate offense for felony murder. . . . The legislature does not agree with or accept the court's findings of legislative intent in *State v. Andress* . . . and reasserts that assault has always been and still remains a predicate offense for felony murder in the second degree.

LAWS OF 2003, ch. 3, § 1; *In re Pers. Restraint of Bowman*, 162 Wn.2d 325, 335, 172 P.3d 681 (2007) ("[F]ollowing our decision in *Andress*, the legislature amended the second degree felony murder statute, effective February 12, 2003, to clarify that assault *is* included as a predicate crime under the second degree felony murder statute."); *Gordon*, 153 Wn. App. at 527-29. We do not delete language from an unambiguous statute. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). We must therefore give effect to the plain language "including assault."

No. 44972-2-II

Because the statute is unambiguous under traditional rules of statutory interpretation, we do not apply the rule of lenity. *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 462, 219 P.3d 686 (2009). Therefore, we affirm McDaniel's conviction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

McDaniel also argues that his convictions for second degree murder and second degree unlawful possession of a firearm should be reversed because (1) the breadth of prosecutorial discretion when charging felony murder based on assault violated McDaniel's equal protection rights, (2) the trial court violated McDaniel's right to present a defense when it excluded expert gang testimony, and (3) McDaniel's trial counsel was ineffective because she allowed the prosecution to implicate McDaniel in an otherwise inadmissible prior offense during impeachment of a witness. We disagree.

ADDITIONAL FACTS

McDaniel asserted the defense of self-defense. To support his defense, he sought to introduce general evidence about gangs through an expert, Tacoma Police Detective John Ringer. Before trial, McDaniel submitted a summary of his proposed expert testimony about gangs. He planned to have Detective Ringer provide general information about gangs and specific information about the Tacoma Hilltop Crips. McDaniel wanted Detective Ringer's testimony to show the jury that street gangs can have many purposes, including violence for violence's sake, arguing that this information was outside the jury's common experience. In addition, McDaniel also proposed to introduce evidence that Nicholas was a member of the

6

Hilltop Crips. McDaniel argued that this evidence would demonstrate one cause of McDaniel's fear of Nicholas and would also help explain that McDaniel fled north after the shooting to get out of Hilltop Crip territory.

The State moved to exclude Detective Ringer's testimony as well as evidence of Nicholas's gang affiliation, apart from evidence McDaniel might offer of his own knowledge. The trial court granted the State's motion to exclude Detective Ringer's testimony and evidence of Nicholas's gang involvement, but the court ruled that McDaniel could testify regarding his personal knowledge about Nicholas. Despite this ruling, McDaniel did not testify at trial about his knowledge of Nicholas's gang affiliation.

McDaniel testified that he and Angela had been together for 22 years, and that their oldest son was 20 years old. Angela also testified at trial. On cross-examination, the State asked Angela about some statements she had made during the police investigation that differed from her trial testimony. In response to questioning about why her impressions of events had changed, Angela said that she was traumatized and terrified when she was questioned shortly after the incident, so her memory was hazy. On redirect examination, McDaniel asked Angela: "Have you been through anything like this before?" to which Angela responded, "No, nothing like this." 6 VRP at 852.

Outside the presence of the jury, the State argued that this question and answer had opened the door to impeachment based on a prior violent offense by McDaniel. The State noted that Angela had testified that she had never been through anything like the shooting here, when in fact in 1996 McDaniel had shot at a group of people in Angela's apartment, striking one man in the head. Angela had been a crucial witness in that investigation. The State argued that

Angela's trial testimony was therefore a lie, and opened the door to questioning about the 1996 incident. The trial court agreed with the State that the door had been opened. The State said it did not intend to elicit testimony implicating McDaniel in the 1996 shooting, because it was Angela's credibility, not McDaniel's criminal history, at issue.

The trial court agreed with the State. McDaniel's counsel yielded, saying: "Well, I agree with the assessment that I have heard this morning. My concern was that [Angela] should be impeached in regard to her experiences, but not in regard to any connection with my client." 7 VRP at 873. Neither party discussed the issue of the jury independently speculating that McDaniel might have been Angela's boyfriend, and therefore the shooter, in 1996.

After the jury returned to the courtroom, the State asked Angela if she had been through anything like this before. When she again denied it, the State asked whether she had been a witness to a shooting by the man she was dating in 1996. Although Angela at first denied that she had witnessed such a shooting, she ultimately agreed that she had given a statement about a 1996 shooting to the police and that this made her a witness. McDaniel did not object.

## ADDITIONAL ANALYSIS

### III. EQUAL PROTECTION AND DUE PROCESS: PROSECUTORIAL DISCRETION

McDaniel argues that the State's broad prosecutorial discretion to charge either voluntary manslaughter or second degree murder for the same conduct violates his equal protection or due process rights.[6] U.S. CONST. amend. XIV; WASH. CONST. art. I, § 12. We disagree.

---

[6] In his brief, McDaniel cites generally the Fourteenth Amendment to the United States Constitution and article I, § 12, of the Washington Constitution. His argument focuses exclusively on equal protection.

8

A.    *Standard of Review*

We review constitutional challenges de novo. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010). When an appellant alleges an equal protection violation, this court must determine which level of scrutiny applies. *Schatz v. State Dep't of Soc. & Health Servs.*, 178 Wn. App. 16, 24, 314 P.3d 406 (2013), *review denied*, 180 Wn.2d 1013(2014). Where the alleged discrimination affects a suspect classification such as race, or where it burdens fundamental rights or liberties, it will be subject to strict scrutiny. *State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010). Intermediate scrutiny applies where a law affects a semisuspect class, such as gender, or burdens an important right. 170 Wn.2d at 550. Where neither a suspect nor semisuspect class is involved, and where fundamental and important rights are not burdened, the lowest level of scrutiny applies. 170 Wn.2d at 550. This is rational basis review. 170 Wn.2d at 550. We use rational basis review to consider whether the differential treatment of offenders violates equal protection. *State v. Armstrong*, 143 Wn. App. 333, 339, 178 P.3d 1048 (2008).

Our Supreme Court has articulated another test for reviewing equal protection challenges to the felony murder statute. *State v. Leech*, 114 Wn.2d 700, 711, 790 P.2d 160 (1990). Under this second test, we consider whether "the crimes that the prosecuting attorney has the discretion to charge require proof of different elements." 114 Wn.2d at 711. Under this second framework, equal protection is violated only when two statutes criminalize the same acts, but penalize them differently. 114 Wn.2d at 711.

B.     *Rational Basis Exists for Felony Murder Based on Assault*

McDaniel argues that, with assault as a predicate offense for felony murder, the class of defendants who commit second degree assault resulting in death receive different treatment. Some are charged with second degree murder (felony murder), while others are charged with voluntary manslaughter. McDaniel argues that this distinction violates the equal protection and fundamental fairness principles of both the federal and state constitutions.

Under rational basis review, the appellant bears the burden of demonstrating that the law does not bear a rational relationship to any legitimate state interest. *Hirschfelder*, 170 Wn.2d at 551. In *Armstrong*, Division One of this court addressed this question and held that the policy choice to include assault as a predicate offense was rationally related to a legitimate state interest. 143 Wn. App. at 340. As discussed below, we agree with the holding and rationale of Division One.

Under *Hirschfelder*, McDaniel must show that the differential treatment of people who commit an assault resulting in death bears no rational relation to any legitimate state interest. 170 Wn.2d at 551. McDaniel cannot carry this burden. The felony murder statute seeks to "[p]unish, under the applicable murder statutes, those who commit a homicide in the course [of] and in furtherance of a felony." LAWS OF 2003, ch. 3, § 1; *Armstrong*, 143 Wn. App. at 339. This statute is rationally related to the legitimate interest of "punishing those who commit a homicide in the course of and in furtherance of a felony in the same manner as those who intend to kill." *Armstrong*, 143 Wn. App. at 340. McDaniel's argument fails, because the felony murder statute passes rational basis review. 143 Wn. App. at 340.

C.    *No Equal Protection Violation Because Potential Charges Had Different Elements*

McDaniel's argument also fails under the second test, which considers whether the two statutes have the same elements but penalize the same act differently. The elements of felony murder are different from the elements of manslaughter. RCW 9A.32.050(1)(b); 9A.32.060(1)(a); *see Leech*, 114 Wn.2d at 712. The elements of felony murder as charged here, where assault is the predicate offense, are *intentionally* assaulting another either by recklessly inflicting substantial bodily harm or with a deadly weapon, and causing the victim's death in the course of and in furtherance of the assault. RCW 9A.36.021; 9A.32.050(1)(b); *Armstrong*, 143 Wn. App. at 341. The elements of first degree or voluntary manslaughter are *recklessly* causing another person's death. RCW 9A.32.060(1)(a). Therefore, these statutes require different mental states: second degree assault, and therefore felony murder as charged here, requires an intentional assault, whereas first degree manslaughter requires a reckless state of mind. *Leech*, 114 Wn.2d at 712; *Armstrong*, 143 Wn. App. at 341-42. Because these crimes do not have the same elements, the authority of the prosecuting attorney to charge the defendant with felony murder does not violate equal protection. *Leech*, 114 Wn.2d at 712; *State v. Wanrow*, 91 Wn.2d 301, 312, 588 P.2d 1320 (1978); *Armstrong*, 143 Wn. App. at 342.

IV. RIGHT TO PRESENT A DEFENSE: VICTIM'S GANG AFFILIATION

McDaniel next argues that the trial court violated his right to present a defense when it ruled that he could not present expert testimony about gangs. We disagree.

A.    *Standard of Review*

The United States and Washington Constitutions guarantee the right to present a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Wittenbarger*, 124 Wn.2d 467, 474,

880 P.2d 517 (1994). But this constitutional right is not absolute and does not extend to irrelevant or inadmissible evidence. *State v. Maupin*, 128 Wn.2d 918, 925, 913 P.2d 808 (1996). We review a trial court's rulings on evidentiary matters for an abuse of discretion so long as the trial court properly applies the rules of evidence.[7] *State v. Aguirre*, 168 Wn.2d 350, 362-63, 229 P.3d 669 (2010); *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).

To be admissible, evidence must be relevant. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. For expert testimony to be admissible under ER 702, testimony must be (1) by a qualified expert, (2) based on an explanatory theory generally accepted in the scientific community, and (3) helpful to the trier of fact. *State v. Rafay*, 168 Wn. App. 734, 784, 285 P.3d 83 (2012).

B.      *Trial Court Did Not Err by Excluding Irrelevant Expert Testimony*

McDaniel argues that the trial court violated his right to present a defense when it declined to allow expert testimony about gangs from Detective Ringer. We disagree because the evidence was irrelevant, and the right to present a defense does not extend to irrelevant evidence.

---

[7] In *State v. Aguirre*, our Supreme Court held that the scope of the right to present a defense "does not extend to the introduction of otherwise inadmissible evidence. The admissibility of evidence under the rape shield statute, in turn, 'is within the sound discretion of the trial court.'" 168 Wn.2d 350, 3663, 229 P.3d 669 (2010) (citations omitted) (quoting *State v. Hudlow*, 99 Wn.2d 1, 17, 659 P.2d 514 (1983)). In *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010), decided in the same term as *Aguirre*, the court held that the standard of review is de novo whenever a defendant alleges a Sixth Amendment violation. *See also State v. Iniguez*, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009). We follow *Aguirre*, recognizing that the Sixth Amendment right to present a defense does not extend to inadmissible evidence, and we review a trial court's ruling on admissibility of evidence for an abuse of discretion.

Under ER 702, expert testimony must be helpful to the trier of fact to be admissible. *Rafay*, 168 Wn. App. at 784. Expert testimony is only helpful if it is relevant. *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 169, 288 P.3d 1140 (2012). To be relevant, expert testimony must have the tendency to make a fact of consequence to the trial's outcome more or less probable. ER 401; *State v. Atsbeha*, 142 Wn.2d 904, 918, 16 P.3d 626 (2001).

McDaniel challenges only the trial court's exclusion of Detective Ringer's expert testimony. Although the trial court stated it would allow McDaniel to testify regarding his knowledge of Nicolas's gang involvement, McDaniel did not do so. Thus, he presented no evidence that Nicholas was a member of a gang generally or of the Hilltop Crips specifically. Without this evidence, Detective Ringer's testimony could not make any fact of consequence to McDaniel's trial more or less probable. General information about gangs would not make it more or less likely that McDaniel acted in self-defense when he shot Nicholas. Detective Ringer could not, and did not plan to, testify about McDaniel's state of mind or Nicholas's affiliation with any gang. His testimony could not make it more or less probable that McDaniel reasonably feared Nicholas.

Because Detective Ringer's proposed testimony did not address any specific facts about McDaniel's fear of Nicholas, it was irrelevant to McDaniel's self-defense claim. Therefore, the trial court did not err in refusing to admit Detective Ringer's testimony.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, McDaniel argues that his trial counsel was ineffective for failing to object to damaging propensity evidence. He argues that impeachment evidence against his wife necessarily informed the jury of an otherwise-inadmissible prior bad act (that he had shot

13

someone in 1996), and that his trial counsel should have objected to the impeachment. We disagree.

A.    *Standard of Review*

A claim of ineffective assistance of counsel is a mixed question of law and fact we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). A showing of ineffective assistance of counsel requires the appellant to demonstrate both that (1) his counsel's performance was deficient and (2) this deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). The appellant's failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

Where the appellant claims ineffective assistance based on his trial counsel's failure to object, the appellant must also show that such an objection, if made, would have been successful. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). We strongly presume that counsel was effective. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). "To rebut this presumption, the defendant bears the burden of establishing the absence of any '*conceivable legitimate tactic* explaining counsel's performance.'" *Grier*, 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

B.    *Trial Counsel Not Deficient*

We view trial counsel's decision of whether and when to object as a "classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Counsel is not deficient for failing to object to a proper proceeding at trial. *See Gerdts*, 136 Wn. App. at 730. "'Only in egregious circumstances, on testimony central to the State's case, will the failure to

object constitute incompetence of counsel justifying reversal.'" *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763). It is a legitimate trial tactic to forego an objection in circumstances where counsel wishes to avoid highlighting certain evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

On May 15, 2013, the jury heard McDaniel testify that he had been with Angela for 22 years and that their oldest son was 20. Then, on May 20, the State cross-examined Angela about having witnessed the man she was dating shoot someone in 1996. The State was attempting to impeach her credibility with this fact, because she had previously testified on redirect examination that she had never been through an experience like McDaniel shooting Nicholas.

### 1. *Conceivable Trial Tactic*

McDaniel argues that his trial counsel was deficient because she failed to object to impeachment evidence that potentially implicated McDaniel in a shooting from 1996. But there is a conceivable legitimate trial tactic underlying McDaniel's counsel's performance, and so it was not deficient.

McDaniel argues that the State violated the trial court's ruling regarding the impeachment's scope, a contention we disagree with.[8] But even if the prosecutor's questioning exceeded the boundaries set by the trial court, McDaniel's trial counsel would likely have avoided objecting in front of the jury. To object at that time would have been to call more

---

[8] McDaniel argues that the prosecutor "assured the court he would not elicit testimony that implicated McDaniel in the prior event, [but] failed to keep that information from the jury." Br. of Appellant at 36. But the record shows that the prosecutor diligently kept to the agreed boundaries of asking Angela whether she had been a witness in an investigation about a shooting by a man she was dating in 1996, without adding any other information implicating McDaniel.

attention to Angela's testimony, which would possibly invite the jury to consider otherwise-incidental facts with more scrutiny. *See Davis*, 152 Wn.2d at 714. Therefore, McDaniel's trial counsel's performance was not deficient for failing to object to the State's impeachment of Angela.

### 2. *Objection Would Not Have Been Sustained*

Because McDaniel bases his argument on trial counsel's failure to object, McDaniel must also show that such an objection would have succeeded had it been made. *Gerdts*, 136 Wn. App. at 727. Here, an objection would not have succeeded because the State presented admissible impeachment evidence.

"[W]hen a party opens up a subject of inquiry on direct or cross-examination, he contemplates that the rules will permit cross-examination or redirect examination, as the case may be, within the scope of the examination in which the subject matter was first introduced." *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969). Thus, when a party opens the door to impeachment evidence by initiating exploration of a topic, the impeachment evidence is admissible so long as it is within the scope that was first introduced.

Here, McDaniel opened the door to questioning about Angela's previous experience with a man she was romantically involved with shooting someone. McDaniel's trial counsel elicited testimony from Angela that she had never been through something like the shooting before, to explain Angela's inconsistent memories about the shooting of Nicholas. By introducing the subject of inquiry whether Angela truly had never been through something like this before, McDaniel permitted the State to explore and impeach Angela's response on the same topic. Therefore, an objection to this line of questioning would not have been sustained, because

McDaniel opened the door to it and the State's impeachment evidence was directly within the scope of Angela's earlier statement that she had never been through something like this before. The State merely showed that she had.

Because there was a conceivable legitimate trial tactic in McDaniel's trial counsel's failure to object during cross-examination, and because such an objection would not have succeeded, McDaniel cannot overcome the strong presumption that his trial counsel was effective. *State v. McLean*, 178 Wn. App. 236, 247, 313 P.3d 1181 (2013), *review denied*, 179 Wn.2d 1026(2014).

To conclude, we hold that the felony murder statute is not ambiguous. We further hold that McDaniel's equal protection rights were not violated by the breadth of prosecutorial discretion, the trial court did not violate McDaniel's right to present a defense when it excluded expert gang testimony, and McDaniel's trial counsel was not ineffective. We affirm.

_____
Worswick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Melnick, J.