[No. 30896-7-II.   Division Two.   January 11, 2005.]

THE STATE OF WASHINGTON, *Petitioner*, v. ERIC CALVIN KOCH, *Respondent*.

*Gerald A. Horne, Prosecuting Attorney,* and *Miry Kim* and *Jesse Williams, Deputies,* for petitioner.

*Kenneth W. Fornabai,* for respondent.

¶1 ARMSTRONG, J. — The State appeals a superior court decision reversing Eric Koch's conviction for one count of driving while under the influence of intoxicants, arguing that the superior court erred when it held that the district court should have suppressed Koch's breath tests and should have declared a mistrial because the State's toxicologist testified in violation of an in limine order. Because the district court properly admitted the breath test results and the in limine order violation did not harm Koch, we reverse the superior court and affirm the district court's conviction.

## FACTS

¶2 On May 22, 2001, Washington State Patrol Trooper Mark Lewis stopped Eric Koch's vehicle after he saw it cross over a lane divider and make a "jerking correction back into his [vehicle's] lane" of travel. Trial Transcript (TT) at 14-15. Lewis detected an odor of intoxicants coming from inside the vehicle and noticed that Koch had watery, bloodshot eyes. Based on Koch's driving and the field sobriety tests, Lewis believed Koch had been driving under the influence.

¶3 Lewis arrested Koch and advised him of his constitutional rights from the Washington State Patrol DUI (driving under the influence) Arrest Report form; Koch acknowledged that he understood these rights. Melody Martyn, Koch's passenger, testified that because Koch's vehicle was being impounded, she asked Lewis if Koch would be allowed to meet her at a restaurant later that night. Lewis told Martyn that as long as Koch was cooperative and polite, the trooper would return Koch to the restaurant. Koch heard this conversation.

¶4 Lewis also testified that when he arrests someone for driving under the influence, he always tells the person that

"[a]s long as they are cooperative and polite throughout the whole contact they will be going home—they will be going home that evening." Motion Transcript at 71.

¶5 After arresting Koch, Lewis took him to the Fife police station. There, Lewis read Koch the implied consent warnings from the Washington State Patrol DUI Arrest Report form. Koch testified that Lewis angrily confronted another arrested person at the station. According to Koch, he did not want a similar confrontation with Lewis and did not ask for a lawyer or refuse to take the test for fear Lewis would think he was being uncooperative. Koch's breath tests showed alcohol concentration levels of 0.147 and 0.141.

¶6 Koch moved to suppress his breath tests, arguing that Lewis's statements about being polite and cooperative to avoid jail were extraneous to the required statutory implied consent warnings and coerced him into taking the breath test. The district court refused to suppress the test results. Before trial, Koch also moved to exclude testimony concerning the horizontal gaze nystagmus (HGN) test's capacity to show specific levels of intoxication. The court ruled that under *State v. Baity*, 140 Wn.2d 1, 17-18, 991 P.2d 1151 (2000), testimony on the HGN test was admissible to show the presence of alcohol but not a specific level of intoxication. The court and the parties discussed the issue primarily as it would relate to Lewis's testimony, but after trial, the court stated that its order applied to the State's toxicologist as well.

¶7 Lewis testified that when he detects HGN, it tells him "[t]hat there is a chance that there is alcohol in the person's system." TT at 20. But when the prosecutor asked the toxicologist about the reliability of the HGN test, he testified that it was "like 91 or 92 percent reliable" at a 0.08 level. TT at 77. Koch did not object to this testimony but moved for a mistrial, arguing that the prosecutor engaged in misconduct by eliciting this testimony.

¶8 Koch appealed to the Pierce County Superior Court, which reversed his conviction, holding that his breath test evidence should have been suppressed because of Lewis's

statements and because the trial court should have granted a mistrial based on the toxicologist's testimony on HGN reliability. A commissioner of this court granted the State's motion for discretionary review on the implied consent issue; the order also allowed the State to raise the mistrial issue. RAP 2.3(b), (d).

## ANALYSIS

### I. Implied Consent Warnings

■■ ¶9 The validity of implied consent warnings is a question of law we review de novo. *City of Bellevue v. Moffitt*, 87 Wn. App. 144, 146, 940 P.2d 695 (1997). A driver arrested by an officer who has reasonable grounds to believe that the driver is under the influence of an intoxicant is deemed to have consented to a breath or blood test of the alcohol concentration in his blood. Former RCW 46.20.308(1) (1999).[1] The officer must inform the suspect that he may refuse to consent and that he has a right to have additional tests administered by a qualified person of his choice as provided in RCW 46.61.506. Former RCW 46.20.308(2). The officer must also warn the suspect that his license will be revoked or denied if he refuses to submit to the test; that his license will be suspended, revoked, or denied if the test shows an alcohol concentration of 0.08 or more if the person is 21 or over; and that his refusal may be used in a criminal trial. Former RCW 46.20.308(2)(a)-(c). The officer may not add warnings that are not contained in the plain language of the implied consent statute. *Moffitt*, 87 Wn. App. at 149.

■ ¶10 In evaluating the adequacy of implied consent warnings, the issue is whether the warnings gave the defendant an opportunity to knowingly and intelligently decide whether to take an evidentiary breath test. *State v. Whitman County Dist. Court*, 105 Wn.2d 278, 282, 714 P.2d

---

[1] The version of the implied consent statute in effect at the time Koch was arrested.

1183 (1986). These standards are met, at least in part, if the warning permits a person of normal intelligence to understand the consequences of his actions. *Jury v. Dep't of Licensing*, 114 Wn. App. 726, 731, 60 P.3d 615 (2002) (citing *Whitman*, 105 Wn.2d at 286), *review denied*, 149 Wn.2d 1034 (2003).

¶11 The choice to consent to or refuse a breath test is not a constitutional right; it is "a matter of legislative grace" and turns on whether the officer has accurately stated the warnings. *State v. Bostrom*, 127 Wn.2d 580, 590, 902 P.2d 157 (1995) (citing *State v. Zwicker*, 105 Wn.2d 228, 242, 713 P.2d 1101 (1986)). Inaccuracies in the statutory implied consent warnings may require the court to suppress the test results. *See, e.g., State v. Bartels*, 112 Wn.2d 882, 884-85, 774 P.2d 1183 (1989) (suppressing indigent defendants' test results where officers warned that they had right to have qualified person of their choosing administer additional blood test "at your own expense"); *Whitman County*, 105 Wn.2d at 280 (officer's warning that refusal to take breath test "shall" be used at trial required suppression because statute said "may"). But the warnings "need not exactly match the statutory language, just so long as the meaning implied or conveyed is not different from that required by the statute." *Jury*, 114 Wn. App. at 732 (citing *Town of Clyde Hill v. Rodriguez*, 65 Wn. App. 778, 785-86, 831 P.2d 149 (1992)).

¶12 Nonetheless, an officer's attempt to clarify proper warnings may invalidate the warnings if the officer gives inaccurate advice. *See Mairs v. Dep't of Licensing*, 70 Wn. App. 541, 546-47, 854 P.2d 665 (1993). In *Mairs*, the officer read the suspect the implied consent warnings at least four times, but when the suspect did not understand, the officer attempted to clarify by telling her that her license would "probably" be suspended if she refused a test. *Mairs*, 70 Wn. App. at 545-46. Because refusal automatically results in revocation or denial of one's license, the court found the warning was confusing and, thus, invalid. *Mairs*, 70 Wn. App. at 546.

■ ¶13 Here, Lewis's statements to Koch and Martyn that if Koch was cooperative and polite, he would be allowed to go home, applied to the entire contact between Koch and Martyn, not just the breath test. Koch concedes that Lewis read him accurate and complete implied consent warnings, but he argues that Lewis's statements were extraneous and unlawfully influenced his decision.

¶14 Koch relies in part on *Erdman v. State*, 861 S.W.2d 890 (Tex. Crim. App. 1993). The *Erdman* decision involved a former version of the Texas implied consent statute requiring that drivers be warned that their license would be suspended for 90 days and that evidence of their refusal to consent to a test would be admissible against them in court. The trooper gave Erdman these two required warnings but also warned him that if he refused, he would be charged and placed in jail overnight. Finding that this type of nonstatutory information was likely to result in "considerable psychological pressure upon a . . . suspect to consent to the taking of a breath sample," the court held that State did not meet its burden of showing that Erdman's consent was voluntary. *Erdman*, 861 S.W.2d at 893-94.

¶15 But *Erdman* is distinguishable. In *Erdman*, the officer gave the extraneous advice during the specific implied consent warning. Similarly, in Washington cases where the courts have suppressed evidence of blood alcohol levels, the altered warnings were given as part of the statutorily required implied consent warnings. *See, e.g.*, *Bartels*, 112 Wn.2d 882; *Whitman County*, 105 Wn.2d 278. Lewis warned Koch at the beginning of their contact to cooperate throughout the process. The warning was not part of the implied consent warnings; nor was it specifically addressed to Koch's decision to take a breath test. Lewis properly warned Koch of his rights under the implied consent statute and the consequences of his decision to take or refuse the test. We hold that Lewis's cooperation statement did not deprive Koch of the opportunity to knowingly and intelligently decide whether to take the breath test.

## II. Motion in Limine

¶16 The State argues that the superior court erred when it reversed Koch's conviction because he waived any objection to the toxicologist's testimony and the testimony did not prejudice him. Koch responds that his motion for a mistrial was timely and that he was prejudiced by the toxicologist's testimony.

¶17 The district court correctly ruled that under *State v. Baity*, 140 Wn.2d 1, 17-18, 991 P.2d 1151 (2000), a witness may testify that an HGN test can show the presence of alcohol but not the specific levels of intoxicants.

¶18 A party who loses a motion in limine has a standing objection that preserves the issue for appeal. *State v. Sullivan*, 69 Wn. App. 167, 171, 847 P.2d 953 (1993). But in the absence of any unusual circumstance that makes it impossible to avoid the prejudicial impact of inadmissible evidence, the complaining party still must object to preserve the issue for appeal. *Sullivan*, 69 Wn. App. at 173.

¶19 In *Sullivan*, the defendant successfully moved in limine to exclude testimony that would place the defendant in a high risk group of sexual offenders. The defendant did not object to the testimony at issue, but he argued on appeal that one of the State's witnesses violated the in limine order. Because he failed to object at trial and did not raise the issue in his posttrial motion, we held that the defendant had waived appellate review. *Sullivan*, 69 Wn. App. at 169-73.

¶20 Although Koch did not object at the time the evidence came in, he moved shortly afterward for a mistrial. Our concern in *Sullivan* was that a party who wins a motion in limine but does not object to a violation at trial "could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal." *Sullivan*, 69 Wn. App. at 172. Koch does not run afoul of this concern. He raised the issue in time for the trial court to take corrective action, even

though he did not ask for a limiting instruction. Accordingly, we are not willing to say that Koch waived the issue.

¶21 But we are also unwilling to say the error was harmful. We review a denial of a motion for a mistrial for an abuse of discretion. *State v. Barker*, 103 Wn. App. 893, 903, 14 P.3d 863 (2000). An abuse of discretion occurs only if no reasonable judge would have reached the same conclusion. *State v. Rodriguez*, 146 Wn.2d 260, 269, 45 P.3d 541 (2002). And before overturning the trial court's decision, we must find there is a substantial likelihood the error affected the jury's verdict. *Rodriguez*, 146 Wn.2d at 269-70. A mistrial is appropriate only when the defendant has been so prejudiced that only a new trial can ensure that the defendant will be tried fairly. *Rodriguez*, 146 Wn.2d at 270.

¶22 Here, we have decided that the trial court properly admitted Koch's breath test, which gave results of 0.147 and 0.141. A person is guilty of driving under the influence of an intoxicant if he has "within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506" or if the person drives while under the influence of alcohol. RCW 46.61.502(1)(a), (b). In light of the breath test results, Koch cannot show that the toxicologist's testimony about the reliability level of the HGN test at 0.08 sufficiently prejudiced him such that a new trial is necessary.

¶23 Accordingly, we reverse the superior court and reinstate and affirm Koch's district court DUI conviction.

HUNT and VAN DEREN, JJ., concur.

Review denied at 154 Wn.2d 1028 (2005).