IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30933-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN RICHARD QUAALE, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — At issue is whether Ryan Quaale was denied his right to a fair trial when the State's witness, an arresting trooper, testified to his opinion based on a horizontal gaze nystagmus (HGN) test performed in the field that there was "no doubt" Mr. Quaale was impaired from alcohol consumption. Given the type of witness involved, the nature of the testimony, and the limits that our Supreme Court placed on opinions that may be expressed from HGN testing in *State v. Baity*, 140 Wn.2d 1, 991 P.2d 1151 (2000), the opinion might well have improperly influenced the jury, depriving him of a fair trial. We reverse and remand for a new trial.

Mr. Quaale's remaining assignments of error complain of prosecutorial misconduct alleged to have occurred during closing argument. In light of our reversal of the judgment and sentence, we need not address his arguments that the trial court should

have declared a mistrial. With respect to his claim that the alleged misconduct warranted dismissal of the felony driving under the influence (DUI) charge under CrR 8.3(b), Mr. Quaale fails to demonstrate that any prejudice cannot be remedied by the new trial.

## FACTS AND PROCEDURAL BACKGROUND

Ryan Quaale was charged with attempting to elude a pursuing police vehicle and felony DUI based on his detention and arrest in August 2011, following a pursuit by Washington State Patrol Trooper Chris Stone. Trooper Stone had seen Mr. Quaale's truck speeding in a residential neighborhood in Mead and activated his lights to pull him over. Mr. Quaale responded by turning off his truck's headlights and accelerating. Even after overshooting a corner and skidding off the road into a front yard, Mr. Quaale recovered, returned to the road, and persisted in speeding away. Trooper Stone continued to pursue, turning on his siren, and after several more blocks, Mr. Quaale stopped his truck and stepped out.

Trooper Stone handcuffed Mr. Quaale and, as he did, smelled alcohol. To assess whether Mr. Quaale was legally impaired, the trooper performed a field sobriety test for HGN. Nystagmus is the involuntary oscillation of the eyeballs resulting from the body's attempt to maintain orientation and balance; HGN is an inability to maintain visual fixation as the eyes turn from side to side. *Baity*, 140 Wn.2d at 7 n.3. HGN occurs in persons consuming alcohol. *Id.* at 12. The only field sobriety test that Trooper Stone performed on Mr. Quaale was the HGN test. He concluded from the test that Mr. Quaale

2

was impaired and arrested him. He transported Mr. Quaale to a state patrol office, where Mr. Quaale refused to submit to a breath test.

When Mr. Quaale was first tried on the two charges, the jury found him guilty of attempting to elude a police vehicle but was deadlocked on the felony DUI charge. The trial court declared a mistrial on the latter count, and it is Mr. Quaale's second trial on that count that is the subject of this appeal.

At the second trial (as in the first) the State relied on the testimony of Trooper Stone to establish that Mr. Quaale had been driving while intoxicated and impaired. It established that the trooper had been trained as a drug recognition expert (DRE). DREs are trained to recognize the behavior and physiological conditions associated with certain psychoactive drugs and alcohol and, from that, to form an opinion whether a driver is impaired. *Id.* at 4. A full DRE examination of a suspect includes 12 steps, some involving observation and others involving questioning and testing. *Id.* at 6. HGN testing is one of the 12 steps. *See id.*

After having Trooper Stone describe the extent of his experience, explain HGN and the procedure for testing it, and tell the jury about his administration of the test to Mr. Quaale, the prosecutor asked, "In this case, based on the HGN test alone, did you form an opinion based on your training and experience as to whether or not Mr. Quaale's ability to operate a motor vehicle was impaired?" Report of Proceedings (Apr. 9 & May 17, 2012) (RP) at 33. Mr. Quaale's lawyer immediately objected that the trooper was being

3

asked to provide an opinion on the ultimate issue determining guilt. The objection was overruled. Trooper Stone answered, "Absolutely. There was no doubt he was impaired." *Id.*

A second evidentiary issue relevant to this appeal arose later, during the redirect examination of Trooper Stone. During cross-examination, Mr. Quaale's lawyer had asked the trooper whether Mr. Quaale was driving with a suspended license at the time the trooper stopped and arrested him. She would later explain to the trial court that she intended to use the fact that Mr. Quaale's license was revoked to argue that her client attempted to elude the trooper not because he was intoxicated, but out of concern he would be charged for driving with a suspended license. In response to the question, Trooper Stone affirmed that Mr. Quaale's license was revoked at the time.

On redirect, the prosecutor asked Trooper Stone *why* Mr. Quaale's license had been revoked, knowing that it was revoked when Mr. Quaale earlier refused to take a breath test. *See* former RCW 46.20.308(7) (2008); RCW 46.20.3101 (providing for suspension, revocation or denial of an arrested person's license to drive in the event of refusal of a breath test).

Mr. Quaale's lawyer made a timely objection. Outside the presence of the jury, she argued that the question was designed to introduce evidence of criminal history that was not admissible. The prosecutor conceded that "if I had tried to bring it out in my direct, it absolutely would have been objectionable," but "[c]ounsel brought it out in her

4

cross, and the state is entitled to go into it on redirect." RP at 48. The trial court overruled the defense objection and when the jury returned, Trooper Stone testified that Mr. Quaale's license had been revoked for a prior refusal to take the breath test.

Before the parties delivered closing arguments, Mr. Quaale's lawyer raised the issue of the reason for Mr. Quaale's prior license revocation again, asking for a limiting order preventing the State from mentioning it during closing. The prosecutor represented that she would not address it in closing unless there was something in defense counsel's argument that warranted rebuttal. The trial court ruled, "I am going to permit that evidence to stand, and it may be responded to in rebuttal." Clerk's Papers (CP) at 147. Mr. Quaale's lawyer then asked, "So, Your Honor, to clarify, if in closing arguments it is not discussed by me, is that then limiting the State as well?" *Id.* The trial court responded, "Right." *Id.*

During closing arguments the defense did not raise Mr. Quaale's license status. The State raised it in its rebuttal argument, however. Although the trial court granted one defense objection and told the jury to disregard a statement by the prosecutor, it overruled Mr. Quaale's objection to other statements.

After the jury was dispatched to deliberate, Mr. Quaale moved for a mistrial because the State violated the trial court's ruling. The two lawyers disagreed over whether Mr. Quaale's lawyer had raised her client's revoked license status in her closing argument. The trial court reserved ruling on the issue until a transcript could be obtained.

A transcript of the arguments revealed that Mr. Quaale's lawyer had steered clear of her client's license status during closing argument. Having established the violation of the court's ruling, Mr. Quaale then filed a motion to dismiss the felony DUI charge on the basis of governmental misconduct, relying on CrR 8.3(b). He argued that the court should dismiss the case because no limiting instruction could have cured what he characterized as the critical prejudice: namely, that his lawyer had forgone an important explanation for Mr. Quaale's conduct—his concern about being arrested for a suspended license—in reliance on the court's ruling.

Faced with the transcript, the State admitted that the prosecutor had violated the court's ruling but argued she was justified in raising the revoked license because it was a fair response to the defense argument that in refusing to submit to a breath test, Mr. Quaale was exercising a legal right. The trial court denied Mr. Quaale's motion, reasoning that the tendency of the defense statement was to "advance a rationale for the decision to refuse the breath test" and "the prosecution is entitled to counter with an alternative rationale for refusing the breath test." CP at 122. Mr. Quaale appeals.

## ANALYSIS

Mr. Quaale makes four assignments of error: that (1) he was denied a fair trial when Trooper Stone testified that there was "no doubt" he was impaired, (2) prosecutorial misconduct denied him a fair trial, (3) cumulative error denied him a fair

6

trial, and (4) the trial court erred in denying his motion to dismiss the prosecution. We

address the opinion testimony and governmental misconduct issues in turn.

*Did Trooper Stone's opinion that Mr. Quaale was "absolutely" impaired*
*deny him a fair trial?*

Mr. Quaale first argues that Trooper Stone's testimony amounted to an opinion on

guilt and thereby denied him a fair trial. The trial court has wide discretion to determine

the admissibility of evidence, and the trial court's decision whether to admit or exclude

evidence will not be reversed on appeal unless the appellant can establish that the trial

court abused its discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001)

(citing *State v. Rivers*, 129 Wn.2d 697, 709-10, 921 P.2d 495 (1996)). A trial court

abuses its discretion when its evidentiary ruling is based on untenable grounds or reasons.

*State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). Where reasonable minds could

take differing views regarding the propriety of the trial court's actions, the trial court has

not abused its discretion. *Demery*, 144 Wn.2d at 758.

ER 701 permits testimony in the form of opinions or inferences that are "rationally

based on the perception of the witness" and "helpful to a clear understanding of the

witness' testimony or the determination of a fact in issue." ER 704 provides that

"[t]estimony in the form of an opinion or inferences otherwise admissible is not

objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Notwithstanding ER 704, however, "[n]o witness, lay or expert, may testify to his

7

opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). On the other hand, "testimony that is not a direct comment on the defendant's guilt . . . , is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." *City of Seattle v. Heatley*, 70 Wn. App. 573, 578, 854 P.2d 658 (1993).

Even where expert testimony is helpful to the jury, "[i]t is unnecessary for a witness to express belief that certain facts or findings lead to a conclusion of guilt." *State v. Montgomery*, 163 Wn.2d 577, 592, 183 P.3d 267 (2008). "[O]pinion testimony should be avoided if the information can be presented in such a way that the jury can draw its own conclusions." *Id.* at 591 (citing FED. R. EVID. 702 advisory committee notes). In *Montgomery*, our Supreme Court explained that "[t]o avoid inviting witnesses to express their personal beliefs, one permissible and perhaps preferred way is for trial counsel to phrase the question 'is it consistent with' instead of 'do you believe.'" *Id.* at 592.

Washington decisions have previously addressed whether HGN testing and the other 11 steps of a DRE evaluation are scientific, and whether they meet the requirements of *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923) for novel scientific

8

evidence. In *Baity*, 140 Wn.2d at 14, the Supreme Court held that although not all components of DRE testing are scientific in nature, HGN testing is. It also concluded that HGN testing is generally accepted in relevant scientific communities as a means of indicating the ingestion of certain drugs or alcohol. Because the conclusions to be drawn from HGN testing are indefinite as to the amount of consumption or impairment, however, the court explicitly limited the type of opinion that may be offered from HGN testing. *Baity* involved challenges to HGN testing for impairment from drug use rather than alcohol, but its discussion of limitations on the type of opinion that may be offered have equal application where a DUI charge is based on impairment from alcohol consumption.

The court held in *Baity* that even where an officer has fully evaluated a driver using all 12 steps of DRE,

> an officer may not testify in a fashion that casts an aura of scientific certainty to the testimony. The officer also may not predict the specific level of drugs present in a suspect. The DRE officer, properly qualified, *may express an opinion that a suspect's behavior and physical attributes are or are not consistent with the behavioral and physical signs associated with certain categories of drugs.*

*Id*. at 17-18 (emphasis added).

These limitations find support in later decisions by other courts, evaluating even more recent studies and scientific opinion. The most recent *Frye* hearing on the admissibility of such evidence that we encountered in our review was ordered by the

9

Illinois Supreme Court in 2007. In that *Frye* hearing conducted in 2007 and 2008 (the *Frye* hearing reviewed in *Baity* appears to have taken place in 1998) it was concluded that testimony regarding HGN testing results "'should be limited to the conclusion that a "failed" test suggests that the subject may have consumed alcohol and *may [have] be[en]* under the influence. There should be no attempt to correlate the test results with any particular blood-alcohol level or range or level of intoxication.'" *People v. McKown*, 236 Ill.2d 278, 293, 924 N.E.2d 941 (2010) (alterations in original). The Illinois Supreme Court affirmed that limitation in 2010, explaining that "[a] failed HGN test is relevant to impairment in the same manner as the smell of alcohol on the subject's breath or the presence of empty or partially empty liquor containers in his car"—each fact is evidence of alcohol consumption and is relevant and admissible for that reason. *Id.* at 302-03.

Division Two of this court was called upon to apply the limits on opinion evidence imposed by *Baity* in *State v. Koch*, 126 Wn. App. 589, 103 P.3d 1280 (2005). In that case, the trial court had ruled in response to a motion in limine—"correctly," according to Division Two—that the State's experts "may testify that an HGN test can show the presence of alcohol but not the specific levels of intoxicants." *Id.* at 597. An arresting officer called by the State abided by the order, testifying that "when he detects HGN, it tells him '[t]hat there is a chance that there is alcohol in the person's system.'" *Id.* at 593 (alteration in original). But when the prosecutor asked the State's toxicologist about the

10

reliability of the HGN test, the toxicologist testified that it was "'like 91 or 92 percent reliable'" at a .08 level. *Id.*

Division Two found that the admission of the toxicologist's report was error and that it had not been waived. But it concluded that the error was harmless because the result of the defendant's breath test (a blood alcohol content of .147 and .141) had also been admitted into evidence, and properly so. In light of the blood test results, the defendant could not show that the toxicologist's testimony about the reliability of the HGN test so prejudiced him as to require a new trial.

We turn, then, to the admission of Trooper Stone's opinion testimony in this case. To determine the admissibility of challenged opinion testimony, Washington courts consider the circumstances of the case, including the following five factors: "'(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *Montgomery,* 163 Wn.2d at 591 (internal quotation marks omitted) (quoting *Demery,* 144 Wn.2d at 759).

In *Montgomery,* the Supreme Court analyzed how several of the five factors are weighed in the context of an arresting officer providing testimony that is arguably an opinion on guilt, direct or by inference. As to the "type of witness involved," the court reiterated the well-recognized fact that police officers' testimony "carries an 'aura of reliability'" yet at the same time, their opinions on guilt "have low probative value." 163

11

Wn.2d at 595 (quoting *Demery*, 144 Wn.2d at 765). Police officers' area of expertise "is in determining when an arrest is justified, not in determining when there is guilt beyond a reasonable doubt." *Id.* (citing Deon J. Nossel, Note, *The Admissibility of Ultimate Issue Expert Testimony by Law Enforcement Officers in Criminal Trials*, 93 COLUM. L. REV. 231, 244 n.70 (1993)). This factor, then, weighed against the admissibility of Trooper Stone's opinion.

As to the specific nature of the testimony, the prosecutor did not merely ask whether Mr. Quaale displayed HGN consistent with the consumption of alcohol; she asked the trooper directly for his opinion whether Mr. Quaale's ability to operate a motor vehicle was impaired. This was equivalent to framing questions and receiving answers in the form of personal belief, which was criticized in *Montgomery*. *See id.* at 594 (stating it was "very troubling that the testimony in this case was quite direct and used explicit expressions of personal belief"). Moreover, the trooper's testimony that he had "absolutely" formed an opinion that there was "no doubt" Mr. Quaale was impaired overstated the exactness of HGN testing in respects explicitly forbidden by *Baity*.

The State protests that the *Baity* limitations were not violated because the trooper did not testify to blood alcohol content in numeric terms. But testimony need not be numeric to violate *Baity*. To say the HGN test establishes "no doubt" of impairment casts an aura of scientific certainty that the level of drugs was sufficient to impair. This second factor, then, strongly weighed against the admissibility of the trooper's opinion.

12

As to the nature of the charge and the type of defense, the core issue and only disputed element of the felony DUI charge was whether Mr. Quaale was impaired. The jury was instructed that to convict Mr. Quaale of felony DUI, it was necessary for the State to prove, among other required elements, that in driving his truck at the time he was stopped by the trooper, Mr. Quaale had been "*under the influence of or affected by intoxicating liquor.*" CP at 91 (Instruction 4). It was instructed that "[a] person is under the influence of or affected by the use of intoxicating liquor if *the person's ability to drive a motor vehicle is lessened in any appreciable degree.*" *Id.* at 92 (Instruction 5). The trooper was asked, again, whether he formed an opinion "*whether or not Mr. Quaale's ability to operate a motor vehicle was impaired,*" to which the trooper responded, "*There was no doubt he was impaired.*" While not a direct opinion on guilt, it was an opinion on an ultimate issue and sufficiently equivalent to the key element in dispute to create a concern, in light of the other factors, that the jury would be unduly influenced by the testimony. *Cf. Black*, 109 Wn.2d at 349 (rape counselor's testimony that in her opinion, there was a specific rape trauma profile for rape victims and the alleged victim fit it "constitutes, in essence, a statement that the defendant is guilty of the crime of rape"); *State v. Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992) (expert stating belief that child was not lying about sexual abuse "effectively testified" that defendant was guilty); *State v. King*, 167 Wn.2d 324, 219 P.3d 642 (2009) (State

13

conceded that officer's testimony that defendant's actions had been reckless within the meaning of that element of the crime of reckless driving was improper).

The State argues, however, that this case is on all fours with *Heatley*, in which Division One of this court held that an officer permissibly testified to his determination that the defendant was "'obviously intoxicated and affected by the alcoholic drink that he'd been, he could not drive a motor vehicle in a safe manner.'" 70 Wn. App. at 576. We agree that the subject matters on which the opinions in *Heatley* were expressed— intoxication and impairment—are the same as the subject matters here. But there are critical differences between the opinion offered in *Heatley* and the opinion offered in this case.

The opinion expressed in *Heatley* was, as that court pointed out, "based on [the officer's] detailed testimony about his observations of Heatley's physical condition and performance on the field sobriety tests." *Id.* at 581. As a foundation for his opinion, the officer described a number of observations as well as Mr. Heatley's performance on tests that included reciting the alphabet, counting backwards, and performing several balance tests. "The jury was therefore in a position to independently assess the opinion in light of the foundation evidence." *Id.* at 581-82. Some effects of alcohol are, as recognized in *Heatley*, "'commonly known and all persons can be presumed to draw reasonable inferences therefrom.'" *Id.* at 580 (quoting *State v. Smissaert*, 41 Wn. App. 813, 815, 706 P.2d 647 (1985)).

14

In addition, the officer in *Heatley* spoke only to his determination based on these fully described, nontechnical observations, not to certainty. As our Supreme Court has since said of *Heatley*, "A lay person's observation of intoxication is an example of a permissible lay opinion. But the advisory committee to Federal Rule of Evidence 702 explained that witnesses should not tell the jury what result to reach and that opinion testimony should be avoided if the information can be presented in such a way that the jury can draw its own conclusions." *Montgomery*, 163 Wn.2d at 591 (citation omitted).

Here, unlike in *Heatley*, Trooper Stone testified to an opinion arrived at from a test that *Baity* concluded was scientific and subject to *Frye*. And rather than testify that Mr. Quaale's HGN was consistent with consumption of alcohol, he testified that there was "no doubt" as to impairment, exceeding the opinions that *Baity* held could permissibly be expressed. *Heatley* itself recognized that "[w]hether testimony constitutes an impermissible opinion on guilt or a permissible opinion embracing an 'ultimate issue' will generally depend on the specific circumstances of each case." 70 Wn. App. at 579.

Accordingly, while the "nature of charge" and "type of defense" factors might not have weighed against admissibility had the trooper testified to a foundation whose support for his opinion could be independently assessed by the jury, they do weigh against admissibility here. The opinion addressed not only an ultimate fact, and not only the core disputed fact, but in the form of a conclusion from scientific evidence that the jury was not in a position to independently assess.

15

As to the fifth factor—the other evidence before the trier of fact—Trooper Stone offered testimony that Mr. Quaale smelled strongly of alcohol and he testified to Mr. Quaale's reckless and irresponsible driving before being stopped and arrested. But Trooper Stone was the only witness who offered evidence of Mr. Quaale's intoxication. As a result, this fifth factor might not weigh in favor of excluding the evidence but it does not weigh in favor of admitting it, either.

Given four factors weighing against the admissibility of the opinion (one strongly), and no factor weighing in favor, we conclude that admitting Trooper Stone's testimony violated Mr. Quaale's constitutional right to have a fact critical to his guilt determined by the jury.

Constitutional error is harmless if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002). In light of the fact that the trooper's testimony was the only evidence that Mr. Quaale's ability to drive a motor vehicle was lessened in any appreciable degree, and the jury deadlock on the felony DUI count in the first trial, the error was not harmless. The judgment and sentence must be reversed and the case remanded for a new trial.

16

*Has Mr. Quaale demonstrated prejudice from governmental misconduct that materially affected his right to a fair trial and cannot be remedied by a new trial?*

Mr. Quaale's three remaining assignments of error are related to his contention that the State engaged in prosecutorial misconduct when it violated the court's order limiting references to his license status in closing argument. Because we are reversing and remanding the case for a new trial on other grounds, we need not reach two of these assignments of error, which seek only reversal. There is no reason to believe that the same limiting order will be needed in a retrial or, if needed, will be violated.

Mr. Quaale's last assignment of error, however, is to denial of his motion to dismiss. Because he seeks reversal with directions to dismiss the felony DUI charge with prejudice, this assignment of error must be addressed.

After obtaining a transcript demonstrating that his lawyer did not raise the revoked status of his license in her closing argument, Mr. Quaale moved the court pursuant to CrR 8.3(b) to dismiss the felony DUI charge against him for government misconduct. CrR 8.3(b) provides in relevant part that

> [t]he court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

The power to dismiss a prosecution under the rule is discretionary and is reviewable only for manifest abuse of discretion. *State v. Dailey*, 93 Wn.2d 454, 456,

610 P.2d 357 (1980). Dismissal is considered an extraordinary remedy for prosecutorial misconduct and will be granted only when there has been prejudice to the rights of the accused that materially affects his right to a fair trial and cannot be remedied by granting a new trial. *State v. Whitney*, 96 Wn.2d 578, 580, 637 P.2d 956 (1981) (quoting *State v. Baker*, 78 Wn.2d 327, 332-33, 474 P.2d 254 (1970)).

We need not determine whether there was prosecutorial misconduct that prejudiced Mr. Quaale in the second trial, because it is clear that the prejudice he identifies will not abide retrial. He may still argue whether the State's theory of *why* he refused a breath test is relevant. He may still argue whether evidence of a prior arrest, or that implicitly reveals a prior arrest, is subject to ER 404(b). He may still seek, through rulings in the next trial, to make the argument he claims he was required to forgo in the trial below.

We reverse the judgment and sentence and remand for a new trial.

_____, A.C.J.
Siddoway, A.C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.

18