**FILED**
**JUNE 10, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39994-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BLAKE ANTHONY BROWN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — At the conclusion of trial, a jury found Blake Brown guilty of two counts of child molestation in the first degree, two counts of assault in the second degree, and one count of incest in the second degree.

Mr. Brown appeals, arguing: (1) the prosecutor engaged in multiple acts of misconduct; (2) he received ineffective assistance from his trial counsel; and (3) the court erred in admitting recordings of child forensic interviews, denying his motion for a mistrial, and failing to give the jury a unanimity instruction for the assault charges. We disagree with each argument and affirm.

BACKGROUND

Mr. Brown and Morgan Hart are the parents of two children, daughter, E.H., and son, T.B. When T.B. and E.H. were 13 and 14 years old, respectively, the Ellensburg Police Department received a Child Protective Services (CPS) referral alleging Mr. Brown had inappropriately touched E.H.

Detective Ryan Shull contacted Ms. Hart and arranged an interview with E.H. Ms. Hart and E.H. did not return to their home after the interview. Detective Shull later interviewed Mr. Brown, who denied the allegations of sexual abuse, but admitted to strangling the children, claiming he was teaching them mixed martial arts.

The State charged Mr. Brown with three counts of child molestation in the first degree listing E.H. as the victim,[1] two counts of assault in the second degree, one count naming E.H. as the victim and the other naming T.B., and one count of incest in the second degree, listing E.H. as the victim.

Mr. Brown moved, in limine, to exclude evidence of him spanking the children and hitting them with a belt. The State opposed the motion, arguing the evidence was relevant to demonstrate that Mr. Brown's disciplinary methods created fear in the children, thus explaining their delay in reporting. The court ruled the State could

---

[1] The State dismissed count 3 after resting its case.

introduce evidence of the children being hit with a belt or spanked, but prohibited

witnesses from using the term "beaten." Rep. of Proc. (RP) at 31.

Mr. Brown also moved to exclude evidence of him forcing his children to drink

alcohol or consume certain foods. The prosecutor responded that the evidence was

relevant to explain why the children were unable to refuse Mr. Brown's demands and

why they delayed reporting the abuse. The court granted the motion but allowed E.H.

and T.B. to testify generally about their perception that Mr. Brown exerted control over

them.

At trial, Ms. Hart testified about her relationship with Mr. Brown. She described

Mr. Brown as "controlling" throughout the marriage and testified that she felt "verbally

and emotionally abused." RP at 204. She further stated that it was not a happy marriage,

and that Mr. Brown remained "just as horrible," even after returning from deployments in

Iraq. RP at 207.

E.H. testified that Mr. Brown had physically, emotionally, and sexually abused

her. She described Mr. Brown as intimidating and lived in fear of him lashing out at her

over the smallest things. She testified that Mr. Brown used physical discipline, including

hitting her with a belt and strangling both her and T.B. to the point of unconsciousness.

She further testified that Mr. Brown engaged in sexual misconduct with her several times

when she was 10 or 11 years old.

3

E.H. testified that she confided in Mr. Brown's aunt about the abuse when she was 14 years old, who then reported the abuse to CPS. E.H. testified Detective Shull interviewed her in the presence of a social worker and Ms. Hart.

T.B. testified that his childhood was marked by frequent yelling, hitting, and punishment by Mr. Brown. He recalled that Mr. Brown had struck both he and E.H. with a leather belt and had taken their money. He testified to Mr. Brown strangling him multiple times and attested to a specific incident when Mr. Brown strangled him and E.H. to the point of passing out. T.B. testified that he was interviewed by Detective Shull in the presence of Ms. Hart and his step-grandmother, Rebecca Domcbik.

Throughout the trial, Mr. Brown's attorney questioned whether the presence of others during Detective Shull's interviews of the children tainted the quality of the interviews. To rebut this allegation, the State requested it be allowed to play the recorded interviews for the jury. Mr. Brown's attorney objected, arguing he had not attacked the interviews sufficient to open the door to the recordings being played to the jury, that the recording would be duplicative of other evidence, and that the recordings would not show the presence of others in the room. The court disagreed, reasoning that the jury should be able to evaluate the effect of others being present during the interviews.

Ultimately, the jury found Mr. Brown guilty of two counts of child molestation in the first degree, two counts of assault in the second degree, and one count of incest in the second degree. The jury further found the crimes were committed against family

4

members. Mr. Brown was thereafter sentenced to 173.5 months to life of confinement on the child molestation charges.

Mr. Brown timely appeals.

ANALYSIS

PROSECUTORIAL MISCONDUCT

Mr. Brown argues the prosecutor engaged in acts of misconduct that, individually and collectively, deprived him of a fair trial. We disagree.

Prosecutorial misconduct warrants reversal if the defendant establishes the prosecutor's conduct was both improper and prejudicial. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011); *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). A prosecutor's misconduct is prejudicial when there is a substantial likelihood the misconduct affected the jury's verdict. *Emery*, 174 Wn.2d at 760. If a defendant failed to object to the prosecutor's alleged misconduct, then "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61.

*Character, Prior Bad Acts, Vouching, and Appeal to Passion of Jury*

Mr. Brown argues the prosecutor attacked his character, appealed to the passions of the jury, and vouched for the State's witnesses during its summation.

5

Aside from citing principles of law and cataloging the offending comments, Mr. Brown fails to provide a meaningful analysis or clear argument as to why the comments were improper, how the comments were prejudicial, or why an instruction from the court could not have cured any resulting prejudice. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). Moreover, this court refrains from creating arguments for the parties. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 138, 267 P.3d 324 (2011). Consequently, we decline review of the prosecutor's alleged improper comments.

### *Children's Recorded Interviews*

Relying on *State v. Fisher*, 165 Wn.2d 727, 202 P.3d 937 (2009), Mr. Brown contends the State improperly used the recorded interviews as substantive evidence rather than its stated purpose of rebutting Mr. Brown's claim that the interviews were tainted by outside influences.

Mr. Brown fails to direct us to any portion of the record where the State presented the recorded interviews as substantive evidence. "Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." *Cook v. Brateng*, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010). The recorded interviews presented to the jury were consistent with the State's intended purpose of dispelling any notion that they were tainted by outside influences.

6

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Brown argues he received ineffective assistance of counsel when his attorney failed to object to testimony about his character and prior bad acts. We disagree.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

A defendant bears the burden of showing (1) that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation. *Id*. The reasonableness of counsel's performance is to be evaluated from counsel's

perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. A sufficient basis to rebut legitimate trial strategy exists when the defendant demonstrates there is "no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

The decision whether to object can be a trial tactic. *State v. Stotts*, 26 Wn. App. 2d 154, 165, 527 P.3d 842 (2023). Defense counsel may choose not to object to avoid highlighting otherwise inadmissible low-value evidence. *Id.* Our courts typically do not consider a failure to object as incompetence of counsel unless it occurs in egregious circumstances involving testimony central to the State's case. *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). Absent a valid strategic reason, "if defense counsel fails to object to *inadmissible* evidence, then they have performed deficiently, and reversal is required if the defendant can show the result would likely have been different without the inadmissible evidence." *Id.* at 248-49.

Mr. Brown claims his trial counsel was ineffective for failing to object to inadmissible character evidence and prior bad acts. Among other statements, Mr. Brown challenges his attorney's failure to object to Ms. Hart's testimony that he is "a controlling person" and was "still just terrible" upon his return from Iraq. RP at 218, 247. He

further asserts his attorney was deficient in failing to object to E.H.'s testimony that he had "never been a nice man" and "made us all miserable." RP at 348. Mr. Brown also claims his attorney was deficient in failing to object to T.B.'s testimony that Mr. Brown had hit him with a leather belt, took his money, and constantly yelled at him.

In light of all the circumstances, defense counsel's failure to object to evidence of Mr. Brown's character and prior bad acts amounted to a legitimate trial strategy. From his opening statement, defense counsel presented a consistent theory of the case—that Mr. Brown was on trial for his manner of parenting, that E.H. and T.B. were biased against Mr. Brown due to his strict parenting, and that Ms. Hart was afraid Mr. Brown would take the children from her. Defense counsel posited that these issues motived coaching the children in what to report.

While delivering his opening statement, the State objected to defense counsel's comment, "Anytime there's a divorce, one party is trying to advance their interest, whether it's economic." RP at 195. In response to the objection, defense counsel explained to the court that "[t]his is part of my case." *Id*. Thereafter, defense counsel told the jury, "Clearly, [Ms. Hart] and the children didn't like this level of discipline." *Id*.

During the cross-examination of Ms. Hart, defense counsel attempted to impeach Ms. Hart with a declaration she had earlier authored. The State moved to exclude the declaration. In response, defense counsel argued:

It goes to coaching the children, because here's where it ties together. This is the nexus. Because, this attorney, her stepmom [Ms. Dombcik], is present for the interview of [T.B.], is present for the interview of [Ms. Hart], and is present, I believe and I don't know this for sure, for the interview of [E.H.]. After they separate and—and [Mr. Brown] is out of the house, the children go and live with this attorney in Yakima [Ms. Dombcik]. I think she coached them as to what to say.

RP at 258. Defense counsel's theme continued when, during summation, he argued, "They wanted the discipline to stop. They were living in a disciplined household. And I told you at the very beginning of my opening, he's on trial for his parenting." RP at 643. Defense counsel further argued, "It's clear they hated him, and they wanted to get out of the house. That's their interest and they wanted to punish him." RP at 643.

Defense counsel's opening statement, arguments presented during the trial, and closing argument demonstrate his strategy was to use what may have otherwise been inadmissible evidence to Mr. Brown's benefit. Defense counsel used evidence of Mr. Brown's character and prior bad acts as proof that Ms. Hart, E.H., and T.B. harbored bias against Mr. Brown and were motived by their support of Ms. Hart gaining custody of the children.

Defense counsel's failure to object to character evidence and prior bad acts was a legitimate trial strategy. Mr. Brown did not receive ineffective assistance from his trial counsel.

ADMISSION OF RECORDING

Mr. Brown argues the court erred when, over his objection, it admitted the recorded interviews of E.H. and T.B. The State argues the admission of the recordings was within the court's discretion and necessary to rebut Mr. Brown's assertion that E.H. and T.B. were coached. We agree with the State.

We review a trial court's admission of evidence for abuse of discretion. *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Deference is given to the trial court's determination even if we disagree with the trial court's ultimate decision. *State v. Curry*, 191 Wn.2d 475, 484, 423 P.3d 179 (2018).

During the cross-examination of Detective Shull, Ms. Hart, E.H. and T.B., defense counsel's questioning suggested that Ms. Dombcik participated in or inappropriately influenced the interviews or E.H. and T.B. had otherwise been improperly coached. To rebut these assertions, the State requested the recorded interviews be played to the jury. After considering the arguments of the parties, the court ruled that Mr. Brown had opened the door to the recordings being played, but ordered portions of the recordings be redacted.

Mr. Brown asserts the trial court erred in admitting the recordings because recorded statements given to law enforcement are inadmissible hearsay. Here,

Mr. Brown claims that neither the State nor the court articulated an exception to the hearsay rule sufficient to warrant admission of the recordings.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). "Hearsay is not admissible except as provided by these rules, by other court rules, or by statute." ER 802.

Mr. Brown directs us to *State v. Rushworth*, 12 Wn. App. 2d 466, 458 P.3d 1192 (2020), to support his contention that the open door doctrine is a theory of expanded relevance, not a means of admitting hearsay in violation of the rules of evidence. *Rushworth* is distinguishable. In *Rushworth*, the State sought to admit inadmissible hearsay after the defense elicited hearsay during its questioning of a witness. *Id.* at 478. There, we rejected application of the curative admissibility doctrine, instead noting that the State should have simply objected to the inadmissible hearsay. *Id.*

The facts before us are more similar to those in *State v. Wafford*, 199 Wn. App. 32, 397 P.3d 926 (2017). In *Wafford*, defense counsel explicitly referred to the victim's recorded interview during her opening statement and misrepresented that the victim had denied the abuse. At the State's prompting, the trial court held that defense counsel had opened the door to admission of the relevant portion of the video. *Id.* at 35, 39. In *Wafford*, we reasoned it did not matter whether the open door doctrine was triggered by

opening statements or the admission of evidence; the question was whether having done

so affected the fairness of the trial. *Id.* at 39.

Here, like in *Wafford*, the State did not offer the recordings to prove their truth.

Rather, the recordings were offered, and admitted, to rebut Mr. Brown's contention that

the children's statements had been improperly influenced by a third party. In allowing

the jury to view the recordings, the court found, "the issue though has been about the

presence and the effect of the presence of other people in the interview and the interviews

seem, to me, to be the best way for the jury to make that—that decision themselves."

RP at 438. Because the recordings were not offered to prove the truth of the matters

asserted, the recordings were not hearsay.

Defense counsel consistently questioned the integrity of the interviews.

Admission of the recordings restored fairness to the trial. The trial court did not abuse its

discretion in allowing the jury to view the recorded interviews of E.H. and T.B.

UNANIMITY INSTRUCTION

Mr. Brown argues the trial court erred when it failed to provide the jury with

unanimity instructions for the two charges of assault in the second degree. We disagree.

We review a challenged jury instruction de novo. *State v. DeRyke*, 149 Wn.2d

906, 910, 73 P.3d 1000 (2003). "To convict a person of a criminal charge, the jury must

be unanimous that the defendant committed the criminal act." *State v. Camarillo*, 115

Wn.2d 60, 63, 794 P.2d 850 (1990). A case is characterized as a multiple acts case if the

13

State presents evidence of multiple acts of alleged misconduct and any one of the acts could satisfy the elements of the count charged. *State v. Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). In such cases, because the jury must unanimously agree that one such act satisfied the elements of the count charged, the court must either instruct the jury to agree on a specific criminal act, or the State must elect which act the jury shall rely on. *Id.* In a multiple acts case, if there is no election and no unanimity instruction to the jury, prejudice is presumed. *Id.* at 512. When such an error results in prejudice, the error is subject to constitutional harmless error analysis, and the conviction will be overturned unless the error was harmless beyond a reasonable doubt. *Id.*

Here, the court did not err when it failed to provide the jury with a unanimity instruction for the assault charges because the State elected one instance of strangulation for each count of assault. The prosecutor explained in her openings statement, "And, [T.B.] will describe one particular instance that he remembers at a house that they lived in on Spokane Street. Again, he says this is a very frequent occurrence with his dad, but he's able to describe specifically one instance with him and [E.H.]." RP at 192. Thereafter, the State elicited testimony from Ms. Hart, E.H., and T.B. about this specific instance of assault. Finally, the State focused on this same incident reported by Ms. Hart and the children in its closing argument.

14

Although similar instances of Mr. Brown strangling E.H. and T.B. were admitted, the State elected a single act for the jury to rely on for each count. Thus, a unanimity instruction was unnecessary.

The court did not err in failing to give the jury a unanimity instruction for the two counts of assault in the second degree.

DENIAL OF MOTION FOR A MISTRIAL

Mr. Brown argues the court abused its discretion when it denied his motion for a mistrial after evidence previously ruled inadmissible was shown to the jury.

A trial court's decision to deny a motion for a mistrial is reviewed for abuse of discretion. *State v. Thompson*, 90 Wn. App. 41, 45, 950 P.2d 977 (1998). The court should grant a mistrial only when the defendant is prejudiced such that nothing short of a new trial will ensure that the defendant will be tried fairly. *Id.* The trial court is best situated to determine the impact of any irregular occurrence during the trial. *Id.* at 45-46.

On review, this court will determine the prejudicial effect of any irregular occurrence by considering its seriousness, whether it involves cumulative evidence, and whether the court properly instructed the jury to disregard it. *Id.* at 46.

Here, the court excluded statements from T.B. about Mr. Brown's unfaithfulness to Ms. Hart. In violation of the court's ruling, evidence of Mr. Brown cheating on Ms. Hart was presented to the jury during T.B.'s interview:

15

> [DETECTIVE SHULL]: Can you remember anything else that may have been going on around that time?
>
> [T.B.]: No. *Only that he was trying to cheat on my mom.* Practically—I don't know what was going on, but my mom stayed with him. I don't know why.

RP at 529 (emphasis added). Before the recording was presented to the jury, the parties reviewed the transcript for necessary redactions. Nevertheless, the portion of the recording containing T.B.'s statement about Mr. Brown's alleged perfidy was not redacted.

Mr. Brown moved for a mistrial after the State rested its case. Although Mr. Brown did not object when the offending statement was made to the jury, Mr. Brown did timely move for a mistrial. A defendant must give the court the opportunity to take corrective action in order to preserve the issue for appeal. *State v. Koch*, 126 Wn. App. 589, 597-98, 103 P.3d 1280 (2005) (moving for a mistrial preserves the issue for appeal even if no objection is raised because it gives the court an opportunity to remedy). The court denied the motion, reasoning that even though T.B's statement violated an order in limine, it did not rise to the level of depriving Mr. Brown of a fair trial. We agree with the court's assessment.

While the statement was more prejudicial than probative, it was only one statement made in the context of substantial evidence that projected Mr. Brown in a

negative light. Further, the trial court offered to give a limiting instruction, directing the jury to disregard the statement. Defense counsel declined the court's offer.

Because the statement did not prejudice Mr. Brown to the point that nothing short of a new trial would ensure he was tried fairly, the trial court did not abuse its discretion in denying the motion for a mistrial.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Murphy, M.